IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANGELA DUNN, individually and on behalf of all others similarly situated, § § § | CASE NO. |
| Plaintiff, § § | |
| v. § § | JURY TRIAL DEMANDED |
| JPMORGAN CHASE BANK, N.A., § § | |
| Defendant. § § § § | |

## ORIGINAL COMPLAINT

Plaintiff ANGELA DUNN ("Plaintiff"), on behalf of herself and all others similarly situated, by and through their attorneys, brings this action for damages and other legal and equitable relief from Defendant, JPMORGAN CHASE BANK, N.A. ("Defendant" or "Chase") for violations of 42 U.S.C. §§ 1981 *et seq.* ("§ 1981") and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1. This is an action brought by Plaintiff seeking damages from Defendant for acts of discrimination based on race and color. Plaintiff brings this action on behalf of herself, and those similarly situated, as Defendant provided different compensation and professional opportunities to Personal Bankers because of their race.

2. JPMorgan Chase & Co. is a "global financial services firm with assets of $2.6 trillion and operations worldwide."[1]

---

[1] Annual Report 2018, JPMorgan Chase & Co.,
https://www.jpmorganchase.com/corporate/investor-relations/document/annualreport-2018.pdf

ORIGINAL COMPLAINT

1

3. Through its subsidiaries, J.P. Morgan Securities, LLC and JPMorgan Chase Bank N.A., Chase is one of the largest providers of personal banking services. Chase employs thousands of Personal Bankers across more than 5,000 branch locations throughout the United States.

4. Personal Bankers are branch based and are responsible for acquiring and retaining customer relationships. Personal Bankers meet with customers, discover their financial needs, and provide product and service recommendations.

5. At all relevant times, Defendant maintained a segregated employment policy whereby African American Personal Bankers were disproportionately placed at lower-income branches. Defendant's policies failed to provide Plaintiff, and all other similarly situated Personal Bankers, with the same opportunities to transfer and be promoted as their non-African American co-workers who were placed in higher-income branches because of their race. Because African American Personal Bankers are disproportionately placed at lower-income branches, they are paid less than their non-African American co-workers in higher-income branches, as their pay is based, in part, on commission.

## JURISDICTION AND VENUE

6. Plaintiff's claims arise under 42 U.S.C. § 1981, and this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) 42 U.S.C. §§ 1981 *et seq.*, as amended.

7. Venue is proper in this Court in as much as the unlawful employment practices occurred in this judicial district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendant maintains offices, conducts business and resides in this district.

## THE PARTIES

8. Plaintiff Angela Dunn is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African American citizen of the United States of America and is a resident of Orleans Parish, Louisiana. Plaintiff worked at the Gentilly Woods branch in New Orleans, Louisiana, the Broad De Soto branch in New Orleans, Louisiana, and the Lake Forest branch in New Orleans, Louisiana.

9. At all relevant times, Plaintiff was Defendant's employee and therefore covered by § 1981.

10. Defendant JP Morgan Chase Bank N.A. is headquartered at 111 Polaris Parkway, Columbus, Ohio.

11. Upon information and belief, Defendant employs over five-hundred (500) persons.

12. During all relevant times, Defendant has been an employer covered by § 1981.

13. Defendant transacted and continues to transact business in Louisiana by, among other things, employing persons at their branches located within Louisiana and within this judicial district.

## FACTUAL ALLEGATIONS

I. **Facts Common to all Plaintiffs**

14. Chase's policies and practices discriminate against African American Personal Bankers as Chase disproportionately hires African American Personal Bankers into lower

**ORIGINAL COMPLAINT**

performing branches and then refuses to transfer or promote those Personal Bankers into higher performing branches where they would experience better pay, more opportunities for advancement, and fewer risks to their physical safety.

15. Defendant has and is engaged in an ongoing nationwide pattern and practice of race discrimination and knowingly employs company-wide policies and practices that intentionally discriminate against African American Personal Bankers. Defendant's systemic discrimination against African American Personal Bankers includes, but is not limited to, the following practices that intentionally discriminate::

   a) Employing discriminatory policies that assign African American Personal Bankers to lower performing and less safe branches, including by open race matching and racial steering, which result in a segregated workforce and substantial racial disparities in earnings and promotions;

   b) Employing discriminatory policies and practices regarding the assignment of jobs, titles, and designations that disproportionately exclude African American Personal Bankers;

   c) Employing discriminatory policies and practices regarding job assignment, promotion, and management assessment and selection that harm and exclude African American Personal Bankers;

   d) Employing discriminatory compensation policies and practices that disproportionately disadvantage African American Personal Bankers;

   e) Employing discriminatory policies that disproportionally assign African American Personal Bankers to branches that experienced more criminal activity, placing them in a more unsafe work environment than non-African American employees.

16. The intentional discrimination described above is ongoing and constitutes a continuing violation of civil rights laws.

17. Further, Chase maintains a prestigious "Private Client" program reserved for customers with over $250,000 in assets held with Chase. Chase provides these special, high net worth customers with Private Client Bankers, additional personal service, lower costs for transactions, access to J.P. Morgan expertise and planning advice, and other benefits at select branch locations. Access to Private Client customers results in substantially greater business and income opportunities for Personal Bankers who service Private Clients.

18. Private Client locations are largely in affluent areas and are disproportionality absent from predominantly African American communities, to which African American Personal Bankers are steered by Chase. Therefore, African American Personal Bankers are disproportionately excluded from becoming Private Client Personal Bankers and working at Private Client bank branches, thereby harming their compensation and promotional opportunities.

19. The racially discriminatory policies and practices at Chase are uniform and national in scope. Class members relying on Plaintiff to protect their rights work or worked at Chase branches across the country and were harmed by these same policies and practices.

II. **Facts Pertaining to Plaintiff Dunn**

20. Plaintiff was employed by Chase as a Personal Banker from June 2011 to January 2019.

21. Throughout her employment, Plaintiff observed and was subject to racially disparate treatment and racial discrimination at the Chase branches where she worked.

22. For example, in approximately late 2014 or early 2015, Plaintiff was assigned a new White male manager named James Horn. When Mr. Horn came on as manager, he fired

**ORIGINAL COMPLAINT**

approximately seven African American employees, at least two of whom were replaced with White employees. Mr. Horn was also quicker to discipline and fire African American employees than he was to discipline and fire White employees for the same or similar infractions. In addition, Mr. Horn sent Ms. Dunn racist text messages. For example, one of the text messages referred to Ms. Dunn as wanting to get money from reparations for being descended from slaves.

23. Mr. Horn would also allow for himself and one other White employee to receive full days off work, while Plaintiff and other African American employees would receive only partial days off work.

24. Plaintiff, like other similarly-situated African American Personal Bankers, was also subjected to and harmed by Defendant's pattern or practice of discrimination and unlawful policies. Plaintiff was assigned to less lucrative branches, denied promotions and transfers, and lost substantial income as a result of Defendant's discriminatory practices.

25. Though Plaintiff pursued opportunities available to her to develop her skill set and equip herself for management roles at Chase, she was still denied promotions. For example, in approximately late 2015 or early 2016 Plaintiff completed a program whereby she began supervising other employees to some extent, and she both had increased responsibility and took on increased risk as a result. At this time, she was able to complete over-rides in the system when other employees made errors, and she as responsible for any losses.

26. Although Plaintiff repeatedly expressed interest in advancing at Chase and was qualified to supervise other employees, she was repeatedly passed over for management positions. For example, Plaintiff applied to be a manager in the New Orleans market in 2017, but she was told a White woman was being groomed for that position instead.

**ORIGINAL COMPLAINT**

27. The last time Plaintiff applied for a management position, her manager told her that her performance numbers were not high enough. However, Chase evaluates performance based on benchmarks that are significantly more obtainable at higher performing branches. Plaintiff's performance numbers have been artificially limited by her continued placement in low-performing branches with less wealthy clientele, a result of Chase's racially discriminatory policies.

28. Through Plaintiff's entire tenure with Chase, Plaintiff only recalls one African American employee receiving a promotion, and that individual had to first go through the military to receive a veteran's preference before he received the promotion.

29. Plaintiff's physical safety was also put at risk due to Defendant's discriminatory policies and practices, as she was placed at lower performing branches in neighborhoods that experienced more criminal activity than Chase's other branches.

30. In or around July 2018, a sister store in the same neighborhood as Plaintiff's branch experienced a robbery. This was the third robbery that Plaintiff knew of at a Chase bank branch in her neighborhood since she started her employment with Chase. Despite the fact that the robbery happened down the street from her own branch, Ms. Dunn was forced to stay at her branch until 9:00 p.m. and count down an ATM with approximately $75,000. This incident increased Ms. Dunn's anxiety significantly.

31. Finally, Plaintiff received less in compensation than her non-African American counterparts at branches in wealthier neighborhoods.

## RULE 23 CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action pursuant to FED. R. CIV. P. 23(b)(3), on behalf of a class of African Americans who work or worked for Chase as Personal Bankers during the relevant time

period and who were subjected to Chase's discriminatory policies in violation of §1981. All requirements of class certification are met by the proposed class.

33. The Class which Plaintiff seeks to represent is defined as follows:

> All African American Personal Bankers employed by Defendant during the last four years who are or were subjected to polices and/or practices regarding: (i) the assignment of African American Personal Bankers; (ii) the assignment of jobs, titles, and designations; (iii) job assignments, promotions, management assessment, and selection; (iv) compensation, salary, commissions, and/or bonuses; or (v) the disproportionate assignment of African American Personal Bankers to branches that experienced more criminal activity.

34. The number of class members who have suffered from Defendant's violation of 42 U.S.C. §1981, as set forth herein, are too numerous to join in a single action, necessitating class recognition. *See* FED. R. CIV. P. 23(a)(1).

35. All questions relating to the Class's allegations under §1981 share a common factual basis with those raised by the claims of Plaintiff. The claims of Plaintiff are typical of those asserted by the class members. *See* FED. R. CIV. P. 23(a)(3).

36. Plaintiff will fairly and adequately represent the interests of all members of the proposed class. *See* FED. R. CIV. P. 23(A)(4).

37. A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Class's allegations that Defendants violated §1981 by engaging in policies and practices that intentionally discriminated against African American Personal Bankers.

38. The class members of the proposed Class are readily discernable and ascertainable. Contact information for all members of the proposed Class are readily available from Defendant

since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under the Rule 23 requirements.

39. Plaintiff asserts these claims on her own behalf as well as on behalf of the Class Plaintiffs through her attorneys who are experienced in class action litigation as well as employment litigation.

40. Plaintiff is able to fairly represent and properly protect the interests of the absent members of the proposed Class and has no interests conflicting with those of the class.

41. The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual Class Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the class's interests without their knowledge or contribution.

42. Because of the nature of discrimination claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiff's willingness to proceed against Defendant. The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the Class Plaintiffs' jobs and continued employment.

43. The questions of law and fact that are nearly identical for all class members make proceeding as a class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed Class, continued violations of §1981 will undoubtedly continue.

44. Whether Plaintiff and the Class Plaintiffs were discriminated against on the basis of race because of the Chase policies applied to the branches and positions they were assigned is a common question which can readily be resolved through the class action process.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
### Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*
**(Disparate Treatment: Made by Plaintiff, on behalf of herself, and those similarly situated)**

45. Plaintiff Dunn and the FED. R. CIV. P. 23(b) Class are members of a protected class and repeat and re-allege the allegations in the preceding paragraphs, as if fully set forth herein.

46. The conduct alleged herein violations Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* as Defendant has engaged in the practice of discrimination on the basis of race and/or color with respect to the terms and conditions of employment.

47. Defendant intentionally discriminated against the Class and its members as Defendant maintained a policy that discriminated against African American Personal Bankers by denying them assignments and promotions to more favorable, wealthier branch office locations, subjecting them to fewer promotions and lower compensation than their non-African American counterparts.

48. Plaintiffs and the FED. R. CIV. P. 23(b) Class' requests for relief are set forth below.

### JURY DEMAND

Plaintiff hereby requests trial by jury on all issued raised herein.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all FED. R. CIV. P. 23(b) Class Plaintiffs, prays for the following relief:

B. Designation of Plaintiff as representative of the FED. R. CIV. P. 23(b) Class defined herein, and Plaintiff's counsel as Class Counsel;

**ORIGINAL COMPLAINT**

C. That the practices of Defendant complained of herein be determined and adjudged to be in violation of the rights of the Plaintiff and Class Plaintiffs under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.*;

D. That judgment be entered in favor of Plaintiff and Class Plaintiffs against Defendant for back pay (including interest or an appropriate inflation factor), front pay, benefits, and all other amounts owed to Plaintiff and Class Plaintiffs;

E. That Plaintiff and Class Plaintiffs be awarded compensatory damages where available;

F. That Plaintiff and Class Plaintiffs be awarded punitive damages;

G. That Plaintiff and Class Plaintiffs be awarded pre and post judgment interest;

H. That the Court award Plaintiff and Class Plaintiffs attorneys' fees and costs associated with this matter, including but not limited to expert fees' and costs; and

I. That the Court retain jurisdiction over Defendant until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law.

Plaintiff also seeks injunctive relief, including but not limited to:

J. Ordering Defendant to eliminate policies that violate the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.*;

K. Training on the subject of employment discrimination for all of Defendant's employees;

L. Diversity training for all managers conducted by reputable outside vendors;

M. Supervisory discipline up to and including termination for any supervisor who engages in unlawful discrimination;

N. Active monitoring of the work areas to ensure compliance with discrimination policies; and

O. Monitoring by the Court of a Federal Agency to ensure that Defendant complies with all injunctive relief; and

Plaintiff and Class Plaintiffs further demand that they be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Dated:  February 11, 2020　　　　　　　Respectfully submitted:

/s/ Philip Bohrer
Philip Bohrer
Louisiana State Bar No. 14089
phil@bohrerbrady.com
Scott E. Brady
Louisiana State Bar No. 24976
scott@bohrerbrady.com
**BOHRER BRADY, LLC**
8712 Jefferson Highway, Suite B
Baton Rouge, LA  70809
Telephone:  (225) 925-5297

　　　　-and-

Jay D. Ellwanger (*to be admitted pro hac vice*)
Texas State Bar No. 24036522
jellwanger@equalrights.law
Esha Rajendran (*to be admitted pro hac vice*)
Texas State Bar No. 24105968
erajendran@equalrights.law
**ELLWANGER LAW LLLP**
8310-1 N. Capital of Texas Hwy., Suite 190
Austin, Texas  78731
Telephone: (737) 808-2260
Facsimile:  (737) 808-2262

**ORIGINAL COMPLAINT**