UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANGELA DUNN,**<br>    Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-483** |
| **JPMORGAN CHASE BANK, N.A.**<br>    Defendant | **SECTION: "E"** |

## ORDER AND REASONS

Before the Court is Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or Rule 12(b)(3) and to compel arbitration.[1] For the following reasons, Defendants' motion is **GRANTED**.

## BACKGROUND

Plaintiff Angela Dunn, individually and on behalf all others similarly situated, brings an employment discrimination claim under 42 U.S.C. § 1981 against her former employer, Defendant JPMorgan Chase Bank.[2] Chase moves to dismiss Dunn's claim and compel arbitration pursuant to Dunn's agreement to submit employment-related disputes to binding arbitration.

## LEGAL STANDARD

"Arbitration is a substitute for litigation whose purpose is to settle the parties' differences in a fast, inexpensive manner and in a tribunal chosen by them."[3] "When a party to a lawsuit claims that the matter is subject to arbitration, it must be determined whether there is a valid agreement to arbitrate between the parties and whether the

---

[1] R. Doc. 6. Plaintiff opposed the motion. R. Doc. 21. Defendant filed a reply. R. Doc. 23.
[2] R. Doc. 1.
[3] *Hanlon v. Monsanto Ag Prod., LLC*, 48,010 (La. App. 2 Cir. 10/9/13), 124 So. 3d 535, 539 (citing *Tubbs Rice Dryers, Inc. v. Martin,* 44,800 (La.App.2d Cir.2/24/10), 33 So.3d 926, *recons. denied,* 2010–1105 (La.4/29/11), 62 So.3d 105).

1

dispute falls within the scope of the arbitration agreement."[4]

"Louisiana and federal law explicitly favor the enforcement of arbitration clauses in written contracts."[5] The Louisiana Binding Arbitration Law provides:

> A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[6]

Ordinary state-law principles that govern the formation of contracts are applied when deciding whether the parties agreed to arbitration.[7] "Louisiana law does not require that [a] written arbitration agreement be signed by the parties."[8] "Any doubt as to whether a controversy is arbitrable should be resolved in favor of arbitration."[9]

## FACTS

To determine whether personal jurisdiction is lacking under Rule 12(b)(1) or that venue is improper under Rule 12(b)(3), the Court may consider, "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[10] The Court finds the following facts are undisputed based on Dunn's complaint,[11] a copy of Chase's Binding Arbitration Agreement,[12] and a photocopy of the offer letter

---

[4] *Id.*
[5] *Duhon v. Activelaf, LLC*, 2016-0818 (La. 10/19/16).
[6] La. R.S. 9:4201.
[7] *Duhon v. Activelaf, LLC*, 2016-0818 (La. 10/19/16).
[8] *Id.* (citing *Marino v. Dillard's, Inc.*, 413 F.3d 530, 532 (5th Cir. 2005)).
[9] *Woodson Const. Co. v. R.L. Abshire Const. Co.*, 459 So. 2d 566, 569 (La. Ct. App. 1984) (citing *United Steelwks. of Am. v. Warrior and Gulf N. Co.,* 363 U.S. 574 (1960); *American Dairy Queen Corp. v. Tantillo,* 536 F.Supp. 718 (M.D. La.1982)).
[10] *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012).
[11] R. Doc. 1.
[12] R. Doc. 6-2.

Angela Dunn signed before beginning her employment with Chase.[13]

On June 10, 2011, Chase provided Dunn an offer letter for employment as a personal banker at its Gentilly Woods location in New Orleans, Louisiana.[14] This offer letter stated the offer of employment was contingent on Dunn accepting a Binding Arbitration Agreement (BAA) and contained the following "arbitration clause":

> I understand my employment is subject to my and JPMorgan Chase's agreement to submit employment-related disputes that cannot be resolved internally to binding arbitration, as set forth in the Binding Arbitration Agreement. <http://www.jpmorganchase.com/pdfdoc/JPMCArbAgreement>. By signing below, I acknowledge and agree that I have read and understand the Binding Arbitration Agreement, have accepted its terms and understand that it is a condition of my employment with JPMorgan Chase.[15]

This language was set off from the rest of the offer letter by a bold, underlined heading and required Dunn's separate signature of affirmation.[16] On June 15, 2011, Dunn signed the offer letter and signed the separate affirmation within the offer letter stating that she read and understood the BAA.[17]

The BAA requires Dunn to submit "[a]ny and all 'Covered Claims'" to arbitration under the terms of the BAA.[18] The BAA defines the term Covered Claims to include all claims that relate to Dunn's employment with Chase including but not limited to all claims for "violations of . . . Section 1981 of the Civil Rights Act" and all "claims of employment discrimination."[19] With respect to class action suits, the BAA states, "All Covered Claims under this Agreement must be submitted on an individual basis. No claims may be

---

[13] R. Doc. 6-4.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] R. Doc. 6-4.
[18] R. Doc. 6-2.
[19] *Id.* at 1.

3

arbitrated on a class or collective basis unless required by applicable law. Covered Parties expressly waive any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court."[20]

Dunn asserts that, although she signed the offer letter during a meeting with Chase's hiring manager, she was not made aware of the contents of the BAA. Dunn claims she was not provided a hard copy of the BAA.[21] It is undisputed that the BAA was only accessible through the web address contained in the offer letter.[22] Dunn claims, however, that she did not have the opportunity to look up this web address before signing the offer letter and she was not given a copy of the letter to take home with her or review.[23] She argues it was only after receiving Chase's motion to compel arbitration that she learned the web address was to a separate, more detailed arbitration agreement.[24]

## LAW AND DISCUSSION

Two considerations determine whether a particular dispute must be subject to arbitration: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."[25] In her offer letter, and in the BAA incorporated by reference, Dunn agreed to arbitrate disputes arising from her employment with Chase, including claims under 42 U.S.C. § 1981. In the BAA, Dunn also agreed "[n]o claims may be arbitrated on a class or collective

---

[20] *Id.* at 2.
[21] R. Doc. 21-1 ¶ 6.
[22] R. Doc. 6-4.
[23] R. Doc. 21-1 ¶¶ 8, 10.
[24] *Id.* ¶ 6.
[25] *Wieland v. Shreveport Aquarium, LLC*, 53,302 (La. App. 2 Cir. 11/6/19).

basis unless required by applicable law" and that she cannot "participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court."[26] Accordingly, the Court will compel arbitration of Dunn's instant employment-related dispute with Chase to the extent she brings it individually. Dunn may not serve as a class representative or bring her claim against Chase on a class or collective basis.

### I. Dunn's Offer Letter and the BAA Contain Valid Agreements to Arbitrate.

Under Louisiana law, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."[27] "Four elements are required for a valid contract: (1) capacity to contract; (2) mutual consent; (3) a lawful cause; (4) and an object that is lawful, possible, and determined or determinable."[28] The party claiming the existence of a contract bears the burden of proof.[29]

There are two contract clauses at issue in this case. One is the arbitration clause in Dunn's offer letter, which the parties agree Dunn signed before beginning her employment with Chase.[30] The second is the BAA, which the parties agree was referenced in Dunn's offer letter. With respect to both of these contracts, the only contested contractual element is mutual consent.[31]

---

[26] R. Doc. 6-2, at 2.
[27] LA. CIV. CODE art. 1906.
[28] *Henry v. New Orleans Louisiana Saints L.L.C.*, No. CV 15-5971, 2016 WL 2901775, at *5 (E.D. La. May 18, 2016) (citing *Granger v. Christus Health Cent. La.*, 144 So. 3d 736, 760-61 (La. 2013); LA. CIV. CODE arts. 1918, 1927, 1966, 1971).
[29] LA. CIV. CODE art. 1831
[30] R. Doc. 6-4; R. Doc. 21-1 ¶ 4.
[31] The parties do not dispute that they had capacity to contract. Louisiana law presumes that all persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting. LA. CIV. CODE art. 1918. The parties also do not dispute that Dunn's employment contract concerned a lawful cause. "Employment [is a] valid cause of [a] contract." *Cellular One, Inc. v.*

5

### A.   Dunn consented to the arbitration clause in her offer letter.

"[M]utual consent is established through offer and acceptance."[32] In *Henry v. New Orleans Louisiana Saints L.L.C.*, another section of this court found the parties mutually consented to an arbitration agreement as a condition of the plaintiff's employment with the defendant because the parties signed the agreement and the plaintiff continued employment after receiving the arbitration agreement.[33] "[I]t is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him."[34]

Dunn's consent to the terms of the offer letter—including the arbitration clause—is most clearly evidenced by Dunn's two signatures on the offer letter. Moreover, as in *Henry*, Dunns' consent also is evidenced by her employment with Chase after receiving and signing the offer letter. Dunn "cannot avoid [the] obligations [of her offer letter] by contending that [s]he did not read it, that [s]he did not understand it, or that the other party failed to explain it to [her]."[35] As a result, the Court finds the parties mutually consented to the terms of Dunn's offer letter, and the arbitration clause in Dunn's offer letter is enforceable.

### B.   Dunn consented to the terms of the BAA.

Dunn did not directly sign the BAA. Nevertheless, Dunn's consent to the terms of

---

*Boyd*, 653 So. 2d 30, 34 (La. App. 1 Cir. 1995). Finally the parties do not dispute the dispute the legality of the contractual object to arbitrate. "The objects of a contract are the specific actions the parties must undertake to comply with the contract." *Henry*, 2016 WL 2901775, at *5 (citing La. Civ. Code art. 1971). Because Louisiana law favors arbitration, "the act of submitting disputes to arbitration is a valid contractual object." *Id.*

[32] *Id.* (citing LA. CIV. CODE art. 1927.)
[33] *Henry, 2016 WL 2901775*, at *5.
[34] *Aguillard v. Auction Mgmt. Corp.*, 908 So.2d 1, 17 (La. 2005).
[35] *Id.*

the BAA is demonstrated by her signature of the offer letter because the offer letter incorporated the BAA by reference. Further, the BAA is not a contract of adhesion to which Dunn did not meaningfully consent.

### 1. The BAA was properly incorporated by reference in Dunn's offer letter.

Louisiana case law "allow[s] an arbitration agreement to apply if 'an arbitration clause is incorporated by reference to another written contract.'"[36] The incorporation of an arbitration clause by reference to another written contract is a suitable method of evidencing the parties' intent to arbitrate as long as the arbitration clause in the contract referred to has a "reasonably clear and ascertainable meaning."[37] If a contract unambiguously incorporates by reference an arbitration agreement, it is not necessary to discuss issues of intent.[38]

Louisiana courts often have enforced arbitration clauses incorporated by reference in a contract. For example, in *Star Transportation, Inc. v. Pilot Corp.*, the Louisiana Fourth Circuit determined a signed note incorporated by specific reference a Direct Bill Agreement and held the parties' signature of the note evidenced their awareness of an arbitration provision in the Direct Bill Agreement.[39] Similarly, in *Lamarque v. Barbara Enterprises, Inc.*, the Louisiana Fourth Circuit determined that, because a party is deemed to know the contents of a signed written instrument and cannot avoid his or her obligations by claiming he or she did not read it or was not aware of its contents, the

---

[36] *Dufrene*, 03–2201, p. 5–6, 872 So.2d at 1211 (quoting *Woodson Const. Co. v. R.L. Abshire Const. Co.*, 459 So.2d 566, 569 (La.App. 3rd Cir.1984)).
[37] *Woodson Const. Co. v. R.L. Abshire Const.*, 459 So.2d 566 (La. Ct. App. 1984) at 569, citing *J.S. & H Construction Co. v. Richmond County Hospital Auth.*, 473 F.2d 212 (5th Cir. 1973).
[38] *Russellville Steel Co. v. A & R Excavating, Inc.*, 624 So. 2d 11, 13 (La. Ct. App. 1993).
[39] 2014-1228 (La. App. 4 Cir. 6/24/15), 171 So. 3d 1195, 1204, writ denied, 2015-1446 (La. 11/16/15), 184 So. 3d 26.

parties were bound by an arbitration agreement incorporated only by reference in a contract.[40]

By the second signature on her offer letter, Dunn clearly affirmed she read, understood, and agreed to the BAA. Accordingly, the Court finds Dunn consented to the terms of the BAA as it was incorporated by reference in the offer letter, and the BAA is an enforceable contract. Again, "it is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him."[41]

### 2.    The BAA is not a contract of adhesion.

Dunn's primary objection to the enforceability of the BAA is that it is an unenforceable contract of adhesion to which she did not meaningfully consent. *Aguillard v. Auction Management Corp.,* is the seminal Louisiana case addressing the validity of an arbitration agreement under a "contract of adhesion" analysis.[42] In that case, the Louisiana Supreme Court held a contract of adhesion is usually a standard form contract, in small print, prepared by a party with superior bargaining power and presented to a weaker party for acceptance or rejection.[43] The court recognized, however, that not all standard form contracts are adhesionary; a standard form is instead merely a "possible indicator of adhesion."[44] In applying the *Aguillard* standard, courts focus on (1) the physical characteristics of the arbitration clause, (2) the distinguishing features of the arbitration clause, (3) the mutuality of the arbitration clause, in terms of the relative

---

[40] *Lamarque v. Barbara Enterprises, Inc.*, 2006-1422 (La. App. 4 Cir. 4/25/07), 958 So. 2d 708.
[41] *Aguillard v. Auction Mgmt. Corp.*, 908 So.2d 1, 17 (La. 2005).
[42] *Id.* at 10.
[43] *Id.*
[44] *Id.*

8

burdens and advantages conferred by the clause upon each party, and (4) the relative bargaining strength of the parties.[45]

Dunn argues the BAA is an unenforceable contract of adhesion because it was "concealed." Specifically, she claims she was not provided a hard copy of the BAA[46] and was not given the opportunity to look up the web address to the BAA either before or after signing her offer letter.[47] Dunn asserts it was only after receiving Chase's motion to compel arbitration that she learned the web address was to a separate arbitration agreement.[48]

Even assuming Dunn's allegations are true, the Court does not find the BAA is an unenforceable contract of adhesion. First, the BAA was not concealed through means such as small type or failing to set sections of text off from one another. In *Sutton Steel & Supply, Inc. v. BellSouth Mobility, Inc.*, the Louisiana Third Circuit held an arbitration clause was not enforceable because it had been concealed in the contract through vanishingly small type and was not sufficiently distinguished from other clauses.[49]

This case bears no resemblance to *Sutton Steel*. Neither the statement in the offer letter referring to the BAA nor the BAA itself is set in unreasonably small type or otherwise hidden. In fact, the arbitration provision in the offer letter is set off from the rest of the text with a bold, underlined heading and, as stated many times, required Dunn's separate signature of affirmation. As Dunn points out, the BAA is single spaced, but it is not

---

[45] *Sutton Steel & Supply, Inc. v. BellSouth Mobility, Inc.*, 2007-146 (La. App. 3 Cir. 12/12/07), 971 So. 2d 1257, 1266, writ denied, 2008-0094 (La. 3/14/08), 977 So. 2d 931; *see also Hanlon v. Monsanto Ag Prod., LLC*, 48,010 (La. App. 2 Cir. 10/9/13), 124 So. 3d 535, 540.
[46] *Id.* ¶ 6.
[47] R. Doc. 21-1 ¶¶ 8, 10.
[48] R. Doc. ¶ 6.
[49] *Id.*

otherwise conciliatory, and the single spacing does not render it illegible.[50]

Second, Chase's alleged failure to provide a hard copy of the BAA to Dunn did not "conceal" the BAA from her. In *Cowan v. Morgan Keegan & Co., Inc.*, the plaintiff signed a disclosure statement stating an account of his was "covered by a predispute arbitration agreement which is located in paragraphs 19 and 20 of the Client Agreement located on the reverse side of this page."[51] The disclosure statement, however, had been sent by facsimile and did not have a Client Agreement on the reverse side.[52] In fact, the plaintiff testified he "never saw or received" the Client Agreement when he executed the disclosure statement.[53] Nevertheless, because the plaintiff "signed a document that made specific reference to an arbitration agreement," the District Court for the Western District of Louisiana deemed him "to know the contents of the document to which he affixed his signature."[54] The court stated the "document gave him information by which he could have easily requested and obtained a copy of the Client Agreement and arbitration provision, giving the arbitration clause a reasonably clear and ascertainable meaning."

Similarly, in *Alfortish v. GreenSky, LLC*, the plaintiffs signed a "GreenSky Authorization Form" that incorporated by reference a "GreenSky Installment Loan Agreement" that contained an arbitration provision.[55] The plaintiffs argued they should not be bound by the arbitration provision because they never received a copy of the "GreenSky Installment Loan Agreement." Another section of this court disagreed with the plaintiffs and observed, "[w]hether Plaintiffs received the 'GreenSky Installment Loan

---

[50] *See* R. Doc. 64-4.
[51] No. 09-CV-1644, 2010 WL 5103064, at *5 (W.D. La. Nov. 18, 2010), *report and recommendation adopted*, No. 09-CV-1644, 2010 WL 5141340 (W.D. La. Dec. 1, 2010).
[52] *Id.*
[53] *Id.* at *1.
[54] Id. at *5.
[55] No. CV 16-15084, 2017 WL 699830, at *6 (E.D. La. Feb. 22, 2017).

Agreement' before they signed the authorization form, after they signed the authorization form, or never, it cannot be denied that they signed a statement acknowledging receipt of the loan agreement and thereby agreed to be bound by the loan agreement's terms and conditions."[56] The court further stated, "if they signed that form, they agreed to be bound by the terms and conditions in the loan agreement. If they did not have a copy of the loan agreement, they could have easily requested a copy. Thus, we find that there was a valid agreement to arbitrate."[57]

For the reasons stated by the courts in *Cowan* and *Alfortish*, Dunn bound herself to the terms of the BAA by signing and affirming she read, understood, and agreed to its terms, regardless of whether she actually reviewed it. Before affirming she read, understood, and agreed to the BAA, it was Dunn's duty to either request a hard copy or review the agreement on the website. The Court will not penalize Chase for Dunn's failure to request a copy of the agreement because she signed a false affirmation that she had read, understood, and agreed to the BAA.

## II.   The Offer Letter and BAA Require Arbitration of Dunn's Dispute.

The offer letter alone, even if there were no BAA referenced, contains a sufficient "provision in a[] written contract to settle by arbitration a controversy thereafter arising out of the contract."[58] In *Henry*, another section of this court found an employee agreed to arbitrate employment disputes by signing an agreement stating "I agree that all matters in dispute between myself and the Club shall be referred to the Commissioner for binding arbitration."[59] The arbitration clause in Dunn's offer letter is just as clearly a "provision

---

[56] *Id.* at *6.
[57] *Id.* at *7.
[58] La. R.S. 9:4201.
[59] No. CV 15-5971, 2016 WL 2901775, at *5 (E.D. La. May 18, 2016).

11

in a[] written contract to settle by arbitration a controversy thereafter arising out of the contract."[60] The letter states, "I understand my employment is subject to my and JP Morgan Chase's agreement to submit employment-related disputes that cannot be resolved internally to binding arbitration."[61] Again, Dunn specifically affirmed that clause by a second signature. Accordingly, the Court finds the arbitration clause in Dunn's offer letter requires Dunn to arbitrate her instant employment-related dispute.

The BAA provides additional detail with respect to the scope of the agreement. Under the BAA, Dunn must submit to arbitration "[a]ny and all 'Covered Claims,'" including but not limited to all claims for "violations of . . . Section 1981 of the Civil Rights Act" and all "claims of employment discrimination."[62] Dunn's claim under § 1981 is squarely within the scope of the BAA.[63]

Finally, it is well established that claims for racial discrimination, including § 1981 claims, are arbitrable.[64] The case Dunn cites in support of her argument to the contrary,

---

[60] La. R.S. 9:4201; *see also Bartley, Inc. v. Jefferson Par. Sch. Bd.*, 302 So. 2d 280, 282 (La. 1974) ("The Bartley-School Board contract contains a general clause in Article 7, Section 10.12 providing for arbitration of '(a)ll claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof.' A reading of the subcontract between Bartley and American unquestionably shows that these parties incorporated by reference the Bartley-School Board contract and thus intended to be governed by its arbitration provisions.").
[61] R. Doc. 6-4, at 4–5.
[62] R. Doc. 6-2.
[63] Several courts have required parties to arbitrate their claims based on nearly identical arbitration agreements. *See, e.g., JPMorgan Chase & Co. v. Custer*, No. 15-cv-6288, 2016 WL 927339, at *1 (D.N.J. Mar. 10, 2016) (granting motion to compel when "[r]espondent signed the 'Binding Arbitration Affirmation' in his offer letter"); *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 566 (S.D.N.Y. 2013) (requiring parties to arbitrate when offer letter had binding arbitration affirmation with link); *Newhall v. Chase Home Fin. LLC*, No. 10-2624-T-26EAJ, 2010 WL 8759340, at *2 (M.D. Fla. Dec. 22, 2010) (holding that "the FAA and binding and authoritative 4 legal precedent mandate that Plaintiff's [FLSA] claim be compelled to arbitration" when offer letter contained binding arbitration affirmation).
[64] *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 299 ((2002) ("Neither does the Court contest that claims arising under federal employment discrimination laws . . . may be subject to compulsory arbitration") (Thomas, J., dissenting); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir. 1991) ("[W]e have little trouble concluding that Title VII claims can be subjected to compulsory arbitration. Any broad public policy arguments against such a conclusion were necessarily rejected by Gilmer."); *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) ("The legal framework governing [Title VII and § 1981] claims is coextensive."); *Henry v. New Orleans Louisiana Saints L.L.C.*, CV 15-5971, 2016 WL 2901775, at *11 (E.D. La. May 18, 2016) (holding "no federal statute or policy renders Plaintiff's [§ 1981] claims nonarbitrable").

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, is inapposite.[65] In that case, the Supreme Court held that a particular antitrust dispute was subject to arbitration under the Arbitration Act.[66] It has nothing to do with the arbitrability of § 1981 claims.

The Court finds Dunn's § 1981 claims against Chase arising from her employment with Chase are subject to arbitration pursuant to the arbitration clause in her offer letter and the terms of the BAA. Further, the Court finds that, pursuant to the BAA, Dunn cannot act as a class representative and bring her claims against Chase on a class or collective basis.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' motion to compel arbitration is **GRANTED**,[67] that Plaintiff Angela Dunn is directed to submit to arbitration any individual claims she wishes to pursue, that this case is stayed, and that the Clerk of Court administratively close this case, subject to the right of any party to file a motion to reopen based on good cause.

**New Orleans, Louisiana, this 27th day of April, 2020.**

                              **SUSIE MORGAN**
                             **UNITED STATES DISTRICT**

---

[65] 473 U.S. 614 (1985).
[66] *Id.*
[67] R. Doc. 6.